## TREACCAR v. CITY OF GALVESTON et al.
## No. 9485.

Court of Civil Appeals of Texas. Galveston. April 24, 1930.

Rehearing Denied May 22, 1930.

Roberts, Monteith, Baring & Wilson, of Houston, for appellant.

Royston & Rayzor and Bryan F. Williams, all of Galveston, for appellees.

PLEASANTS, C. J..

This suit was brought by appellant against appellees to have an election held in the city of Galveston on May 14, 1929, for the purpose of determining whether there should be levied a tax of 35 cents on each $100 valuation of the taxable property in the city in addition to the tax of 40 cents theretofore voted and levied for the support and maintenance of the public free schools of the city, declared illegal and void because of alleged irregularities in the manner of conducting the election and making returns thereof, and in the alternative to have a recount of the ballots, and the true result of the election determined. The mayor, board of commissioners, and the tax collector of the city of Galveston were named defendants in the suit.

After setting out the grounds of the contest, the petition, which was filed on October 21, 1929, alleges:

"That by the initial notice of contest filed with the Board of Commissioners of the City of Galveston, on the 6th day of June, 1929, and by a supplemental notice of contest filed with said Board of Commissioners on the 20th day of June, 1929, by Contestant, joined therein by various other taxpaying property owners of said City of Galveston, Contestees were duly notified, as required by law, of the intention of Contestant to contest said election, and of the ground upon which said contest would be brought."

The petition further alleges, in substance, that the additional tax sought to be voted at such election did not, as shown by the returns and the officially declared result of the election, receive the votes of two-thirds of the voters voting in the election, required by section 10, article 11, of the Constitution of this state.

It is then alleged:

"Contestant is informed and believes that it is the intention of the Contestees and particularly of the Tax Collector of the City of Galveston, to levy and collect a tax from Contestant and all other property owners of the City of Galveston, in accordance with the results of said special election as declared by the Board of Commissioners of the City of Galveston, who declared said proposition for a thirty-five cent increase in the tax rate for school purposes adopted; that the Board of Commissioners of the City of Galveston, together with the Tax Collector of said city, are preparing to assess the property owned by the Contestants and all other tax-payers of the City of Galveston in an amount equal to the increase voted upon at said special election; and that said Board of Commissioners and Tax Collector fully intend to levy and collect the assessment so made despite the fact that said election was illegal and void and that said proposition was not carried by a two-thirds majority in accordance with the Constitution of the State

of Texas, as hereinabove fully set forth; and that such action on the part of Contestees would result in irreparable damage to Contestant and other taxpaying property owners of the City of Galveston, because of which fact Contestant is without adequate remedy at law."

The prayer of the petition is for a temporary injunction enjoining "Contestees, or any of them, from attempting to assess, levy or collect any part of said Thirty-five (35) cents increase voted upon at said special election; and that upon hearing hereof said temporary restraining order be made permanent and that said special election for an increase in the tax rate for school purposes be declared by this Honorable Court to be illegal and void; or, in the alternative, if said special election be not declared illegal and void, Contestant prays that process issue from this Honorable Court requiring the ballot boxes from each of the twenty-five voting precincts of the City of Galveston to be brought into court and that a recount of the ballots cast at said election be made in open court and the true result of said election declared by this Honorable Court at the conclusion of said recount, and for such other and further orders as to the court may seem necessary and proper, together with such other and further relief, both general and special, to which Contestant may be justly entitled in law or in equity."

Appellees filed a plea to the jurisdiction of the court on the ground that the contestant did not, within thirty days after the result of the election had been officially declared, give notice in writing to any of the defendants of his intention to contest the election, nor any written statement of the grounds relied on to sustain such contest.

Upon a hearing on this plea it was sustained by the trial court, and appellant's suit dismissed.

Upon this hearing it was shown that the only written communication or statement from the appellant to any of the appellees in reference to the subject-matter of this suit, prior to the filing of plaintiff's petition, was the following petition presented on June 6, 1929:

"To the Honorable Board of City Commissioners:

"We, the undersigned, and subscribing taxed-owning property and residents of the City of Galveston, respectfully petition your Honorable Board to recanvass the returns of the recent bond election held May 14th, 1929, and vote on the school tax levy likewise held on said date.

"We have substantial reasons to believe, without the least reflection on the integrity of the Honorable Board of City Commissioners who canvassed the returns initially, that the initial canvass did not reflect the vote of the people and the result thereon as shown by

the returns of the presiding officers in various precincts in said election. Therefore, we respectfully pray a re-canvass in public of the votes cast in the bond election and school tax levy held in the City of Galveston, May 14th, 1929."

This petition was signed by appellant and a number of other citizens of the city. In support of this petition appellant for himself and other citizens of Galveston, on June 20, 1929, presented to the board of commissioners a supplemental petition in which most, if not all, of the irregularities in the conduct and returns of the election complained of in plaintiff's petition are stated. This communication is too long to set out fully, but we here copy from appellees' brief a correct summary of its contents:

"In it the contestant, as the petitioner in behalf of the tax-payers association of Galveston, states his purpose of 'presenting a statement supporting its previous petition for a re-canvass of the election on the several bond issues and school maintenance tax submitted to the voters of Galveston on May 14th, 1929.' He then calls attention to the fact that the previous petition was one 'for a re-canvass of the returns of the presiding officers of such elections and not a recount of the ballots,' and proceeds to set forth his argument in support of his contention that the Board of Commissioners should itself re-open the matter and re-canvass the returns of the election officers, and concludes with the following:

" 'The facts you have easy access to. We have endeavored to give you the law with judicial interpretation in this statement in support of our petition. We have no desire to set aside the will of the people as expressed by the majority vote—rather we defend their right of control as a matter of law and principle. In this instance the majority voting reflected by the returns of the presiding officers have expressed and declared that these bond issues and tax levy have not passed and we are asking that their mandate be expressed by your Honorable Board thru a re-canvass and publishing of the correct returns.'

"A reading of this latter communication will show that it is directed entirely to an effort on the part of its writer to secure action upon the part of the Board of Commissioners of the City to review its own previous action in declaring the results of the elections, and nowhere in it is to be found the slightest intimation of any intention upon the part of the writer to seek the action of a court in the matter, nor any statement that anything urged by him is to be relied upon as a ground for contesting the election in a court proceeding."

 Appellant, by his first proposition, complains of the judgment of the trial court sustaining the plea to the jurisdiction of the

court, on the ground that the plaintiff's petition clearly alleges a compliance by plaintiff with the statute requiring written notice of the contest and a written statement of the grounds upon which the contest would be brought, and such allegations gave the court jurisdiction to hear and determine the contest.

The petition is sufficient on its face to show jurisdiction, and was not subject to demurrer for failure to allege necessary jurisdictional facts, but the plea to the jurisdiction was not considered and sustained as a demurrer.

The record shows that the court heard evidence in support of the plea and found from the evidence that the notice of the contest required by the statute was not given as alleged in the petition, and sustained defendants' plea on this fact finding. It is unnecessary to cite authorities on the proposition that in determining the question of its jurisdiction a court is not bound by the allegations of the plaintiff's petition. The court was probably not required to hear evidence on the plea in advance of a hearing of the case on its merits, but no objection to this method of proceeding with the trial seems to have been made, and if such proceedings could be held irregular, this irregularity would not affect the question of the court's jurisdiction. When at any stage of a trial the court finds that it is without jurisdiction to hear and determine the matter in controversy, it must decline to entertain jurisdiction and dismiss the suit. It has been uniformly held by the decisions of our Supreme and appellate courts that any suit to void an election on the ground of irregularities or misconduct of the election officers in holding and declaring the result of the election can only be brought under the provisions of our election contest statute, and that such suit cannot be entertained by the court unless notice of the contest has been given as required by the statute. Robertson v. Haynes (Tex. Civ. App.) 190 S. W. 735; Caraway v. Romberg (Tex. Civ. App.) 247 S. W. 909; Kincannon v. Mills (Tex. Civ. App.) 275 S. W. 1083; Wright v. Fawcett, 42 Tex. 203; Mercer v. Woods, 33 Tex. Civ. App. 642, 78 S. W. 15; Cauthron v. Murphy, 61 Tex. Civ. App. 462, 130 S. W. 671; Moon v. Alred (Tex. Civ. App.) 277 S. W. 787; Thurston v. Thomas (Tex. Civ. App.) 7 S.W.(2d) 105.

 The next contention of appellant is that the two written communications filed by him with defendant board of commissioners within thirty days after the result of the election was declared constituted a substantial compliance with article 3042, Revised Statutes (1925), requiring notice of contest of an election to be given by the contestant to contestee, and that the trial court erred in holding that sufficient notice of contest had not been given in this case.

We agree with the trial court that the written communications referred to were insufficient to constitute the notice of contest required by the statute. The first communication, which we have before set out in full, is merely a request to the board of commissioners to recanvass the returns of the election, because the petitioners have reason to believe that the former canvass made by the board did not reflect the true result of the election as shown by the returns of the presiding officers in the various voting precincts. It cannot be reasonably contended that there is anything in this communication to give notice to the board of commissioners that unless the returns are recanvassed and the former declared result of the election changed, the petitioners intend to contest the election on the ground that the returns were erroneously made and canvassed by the board.

The second communication, which only purports to be a statement and argument by appellant in support of the petition for a recanvass of the returns, while it calls attention to errors and apparent contradictions in the returns from a number of the voting precincts in the election, is equally silent as to any intention of appellant to contest the election.

It seems clear to us that neither of these communications fulfill the requirements of the statute that written notice of an intention to contest the election must be given the contestee by the contestant. That such notice is necessary to give the court jurisdiction to entertain a suit for that purpose is well settled. This identical question was expressly decided in the cases of Barker v. Wilson (Tex. Civ. App.) 205 S. W. 543, 546; Mercer v. Woods, 33 Tex. Civ. App. 642, 78 S. W. 15; and Moore v. Commissioners' Court (Tex. Civ. App.) 192 S. W. 805.

In the case first cited the contestant delivered the contestee a copy of a petition for contest of the election which he told the contestee he intended to file. In holding that this was not a compliance with the statutory requirement of a written notice of the contestant's *intention* to contest the election, the court says:

"It may be conceded that delivery to him of the petition, setting forth the ground upon which it was claimed that the election was illegal, constituted compliance with one portion of the statute; but it contained no notice notifying the contestee that it was the intention of the contestants to file that petition in court and use it as a basis of a contest. It is no answer to that proposition to say that the contestee knew from what Mr. Burleson [Attorney for contestants] told him that it was the intention of the contestants to contest the election. Such information was not in writing, and therefore it did not constitute compliance with the statute."

In the Moore Case, supra, the court says:

"The giving and serving of the notice prescribed by the statute is the prerequisite to the jurisdiction of the district court. Cauthron v. Murphy, 61 Tex. Civ. App. 462, 130 S. W. 671. A specific mode of contesting an election having been prescribed by the statute, that particular mode alone can be resorted to; it is exclusive of every other mode. And this particular proceeding is not a contest as between two persons, so as to authorize and warrant the county attorney to waive a statutory procedure essentially involving jurisdiction of the district court."

It is clear from these decisions that the service upon contestee of a written notice of an intention to contest an election is essential to the jurisdiction of the district court to entertain a suit brought for such purposes, and it is equally clear from the evidence disclosed by this record that no written notice of such intention was served upon the contestees in this case.

The cases of Messer v. Cross, 26 Tex. Civ. App. 34, 63 S. W. 169, and Dunne v. Sayers (Tex. Civ. App.) 173 S. W. 503, cited by appellant, are easily distinguished from this case. The facts in both the cited cases were held sufficient to show that a written notice of intention to contest the election was served upon the contestee.

■■ We agree with appellant, however, that plaintiff's petition alleges a cause of action independent of the statutory action for contest of the election, if the threatened tax levy upon his property is prohibited by section 10 of article 11 of our State Constitution. This provision of the Constitution is as follows:

"Sec. 10. The Legislature may constitute any city or town a separate and independent school district. And when the citizens of any city or town have a charter, authorizing the city authorities to levy and collect a tax for the support and maintenance of a public institution of learning, such tax may hereafter be levied and collected, if at an election, held for that purpose, two thirds of the taxpayers of such city or town shall vote for such tax."

It is true, as stated in appellees' brief, that violation of section 10, article 11, of the Constitution is one of the grounds for the contest of the election and could properly be determined in that proceeding (Ladd v. Yett [Tex. Civ. App.] 273 S. W. 1006, 1111), but the right of appellant to protect his property against an incumbrance attempted to be imposed and enforced in a manner prohibited by the Constitution is not dependent upon his right to maintain his statutory suit to contest the election. It is therefore necessary for us to determine the question of whether the cited provision of the Constitution, which requires a two-thirds vote to authorize the levy of the

additional tax submitted to the voters in the election, is applicable.

The record shows that, acting under the authority of the provisions of the Constitution contained in the section and article above cited, the Legislature granted a charter to the city of Galveston authorizing the mayor of the city, upon the written application of not less than fifty of the qualified electors of the city, to call an election to be decided by a majority of the qualified electors voting therein to determine whether the city "shall acquire the exclusive control of any or all of the public free schools and institutions of learning within its limits, and whether the same shall be under the control of a board of trustees as hereinafter mentioned, or of the council or board of aldermen of such city."

Under authority of this provision of its charter, the city of Galveston at an election held in June, 1881, took control of its public free schools to be managed by a board of trustees, who were thereafter elected at an election called under this charter provision. A board of trustees elected under this charter provision have managed the public free schools of the city since they were taken over by the city in the election just mentioned.

Section 10, article 11, of the Constitution has not been changed from the form in which it appeared when our Constitution was adopted in 1876. Section 3, article 7, of the Constitution at the time the Constitution was adopted in 1876 only provided that one-fourth of the general revenues of the state should be set aside for the benefit of public free schools. This section was amended in 1883 so as to provide for the levy and collection for free school purposes of an annual ad valorem state tax not to exceed 20 cents on the $100 valuation and to provide for the formation by the Legislature of school districts within any or all of the counties of the state, and further providing that the Legislature "may authorize an additional annual ad valorem tax to be levied * * * within such school districts for the further maintenance of public free schools and the erection of school buildings therein; provided, that two-thirds of the qualified property tax-paying voters * * * at an election to be held for that purpose, shall vote such tax, not to exceed in any one year twenty cents on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts."

This section and article of the Constitution was further amended in 1909 to read as follows:

"And the legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, heretofore formed or hereafter formed, for the further maintenance of public free schools, and the erection and equipment of school buildings therein, provided, that a majority of the qualified * * * voters * * * voting at an election * * * shall vote such tax, not to exceed in any one year fifty cents on the $100 valuation of the property."

In 1926 this section was again amended so as to provide:

"And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified property tax paying voters of the district voting at an election to be held for that purpose, shall vote such tax not to exceed in any one year one ($1.00) dollar on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of such school district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts, nor to independent or common school districts created by general or special law."

We think this provision of the Constitution is applicable and controlling upon the question before us. By its express terms it applies to all school districts heretofore formed and authorizes the additional tax levy therein specified upon a vote of a majority of the tax paying voters of the district.

The city of Galveston is one of the school districts of the state, created as such in the manner provided by our Constitution and legislative acts, and in its capacity as a school district it cannot be denied the rights and privileges given by the Constitution to all other school districts in the state. It cannot be held that because it is an incorporated city having a special municipal charter that its constitutional powers as a free school district of the state are in any way lessened or restricted. We think this question is settled by the opinion of our Supreme Court in the case of Rockdale v. Cureton, 111 Tex. 136, 229 S. W. 852.

This conclusion requires an affirmance of the judgment, and it has been so ordered.

Affirmed.