THE ATTORNEY GENERAL
OF TEXAS



GROVER SELLERS
~~XXXXXXXXXXXXXXXX~~
~~WILL WILSON~~
ATTORNEY GENERAL

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Mr. Trimble:

Opinion 0-7060
Re: May the City of Sherman be author-
ized by a charter amendment adopted
by a majority of the qualified
voters of said city to levy taxes
for municipal purposes not exceed-
ing $2.50 and for school purposes
not exceeding $1.50?

We acknowledge receipt of your opinion request of May 3rd, to-
gether with a letter from Mr. J. Tip Newell, President of the Board
of Trustees of the Sherman Independent School District, and the opinions
of Messrs. Gibson and Gibson and the Honorable George L. Hamilton, City
Attorney of Sherman.

We quote from Mr. Newell's letter as follows:

"The Board of Trustees of the Sherman Independent School
District has requested the City Commission of the City of
Sherman to call elections for the purpose of amending the
Charter of the City of Sherman to remove the limitations on
the amount of taxes that may be levied for school purposes
under the Charter as it now reads, and a separate election
of the qualified property tax paying voters for the purpose
of authorizing the levy of a tax for school purposes not to
exceed $1.50 per $100.00 of assessed valuation. I enclose
herewith copy of the amendments proposed by the school board
and a copy of a draft of a resolution presented to the City
Commission on April 22, 1946 and adopted by the Commission
in substance. Publication of the form of notice contained
in the resolution was started on April 24.

"After the adoption of the resolution (in substance) a
question has come up as to the legal effect of the procedure.
In order to clarify this matter it is requested that you ob-
tain from the Attorney General answers to the following questions:

"1. Can the City of Sherman by eliminating the limita-
tions in its Charter and after approval of the proposed school
tax by the qualified property tax paying voters levy and

assess taxes for municipal purposes up to the two and one-
half per cent limit imposed by section 5 of Article II of
the Constitution of Texas, and in addition to that amount,
taxes for school purposes up to one and one-half per cent
of the taxable property of the city?  In other words can
the City of Sherman as a municipality constitutionally levy
taxes at the rate of two and one-half per cent while at the
same time as an Independent School District levying taxes
at the rate of one and one-half per cent, making a total
authorized tax limit for municipal and school purposes of
four per cent?

"2.  Will the proposed amendments to the Charter of the
City of Sherman, taken in conjunction with a vote of the
qualified property tax paying voters of Sherman authorizing
a school tax rate not to exceed one and one-half per cent be
sufficient to authorize the City of Sherman to levy taxes for
municipal purposes up to two and one-half per cent and in
addition thereto taxes for school purposes up to one and one-
half per cent?

"3.  In the absence of an election under Art. 2783b R.C.S.
for separating the schools from municipal control, who would
have authority to call the election for determining the amount
of school taxes, the City Commission or the School Board?

"In connection with the foregoing questions you are
furnished the following information:

"The City of Sherman on March 6, 1915 adopted a Home
Rule Charter containing the following provisions, as now amended:

"Section 165.  'The City of Sherman is constituted and
shall continue to be a separate and independent school district,
and the City Commission is vested with power to maintain, regu-
late, direct and govern all the public free schools now estab-
lished or hereafter to be established within the limits, and
it is further authorized to pass such ordinances, rules and reg-
ulations, not inconsistent with the Constitution and laws of
this State, as may be necessary to govern the same, establish
new schools, purchase building sites, construct school houses,
and generally to promote free public education within its limits.'

"Section 106.  'The Commission shall have the power within
the City to annually levy and collect taxes for the following
purposes:
     (1)  For general purposes and current expenses not exceed-
ing 50¢ on the $100 assessed value of all real and personal
estate and property in the City not exempt from taxation by the
Constitution and Laws of the State.

(2)  For the maintenance and support of public free
schools not exceeding 85¢ on the $100 Assessed valuation
of real and personal estate and property in the City not
exempt from taxation by the Constitution and laws of the State.

(3)  For the establishment, maintenance and widening,
extension and improvement of its streets, alleys and bridges
not exceeding 20¢ on the $100 assessed valuation of all real
and personal estate and property in the City not exempt from
taxation by the Constitution and laws of the State.

(4)  For the purpose of paying the City's promissory
notes, bonded indebtedness, public improvements, and for the
purposes set out in Section 173 hereof, to include bonds now
outstanding and bonds hereafter legally issued for the purposes
named in this Charter, and as the Commission may deem necessary,
and for the best interest of the City, not exceeding $1.60
on the $100 assessed valuation of all real and personal estate
and property in the City not exempt from taxation by the Con-
stitution and laws of the State.  Said amount shall be appor-
tioned as the Commission shall ordain and deem to be for the
best interest of the City.'

"Section 107.  The taxes that may be levied for all pur-
poses for any one year by said City shall never exceed two and
one-half per cent of the taxable property in said City, in-
clusive of the tax to pay the bonded indebtedness of the Texas
& Pacific and the Houston & Texas Central Railway Companies and
no taxes exceeding said per cent shall ever be levied and collected.'

"It is proposed to amend Section 106 either to read as
follows:  'Section 106.  The Commission shall have the power
within the city to annually levy and collect taxes for the
following purposes:

(1)  For general purposes and current expenses not exceeding
50¢ on the $100 assessed value of all real and personal estate
and property in the City not exempt from taxation by the Constitu-
tion and laws of the State.

(2)  For the establishment, maintenance and widening,
extension and improvement of its street, alleys and bridges
not exceeding 20¢ on the $100 assessed valuation of all real
and personal estate and property in the City not exempt from
taxation by the Constitution and laws of the State.

(3)  For the purpose of paying the City's promissory
notes, bonded indebtedness, public improvements, and for the
purposes set out in Section 173 hereof, to include bonds now
outstanding and bonds hereafter legally issued for the purposes
named in this charter, and as the Commission may deem necessary,
and for the best interest of the City, not exceeding $1.60 on
the $100 assessed valuation of all real and personal estate and
property in the City not exempt from taxation by the Constitution
and laws of the State.  Said amount shall be apportioned as the
Commission shall ordain and deem to be for the best interest of
the City.'

or to repeal paragraph 2 of Section 106

'(2)  For the maintenance and support of the public free schools not exceeding 85¢ on the $100 assessed valuation of real and personal estate and property in the City not exempt from taxation by the Constitution and Laws of the State.'

It is proposed to amend Section 107 to read as follows:

'Section 107.  The taxes that may be levied for all purposes except school purposes for any one year by said city shall never exceed two and one half per cent ($2\frac{1}{2}\%$) of the taxable property in said city, and no taxes exceeding said per cent, exclusive of taxes levied for school purposes, shall ever be levied and collected.'

"The City of Sherman has never extended its boundaries for school purposes, and no effort has ever been made to separate the schools from municipal control.

"It is not desired to separate the schools from municipal control if the necessary tax levies can be legally authorized without taking that step.

"Since the notice for calling the elections for amending the Charter have already been published it will be greatly appreciated if you can obtain a ruling on the matter at your earliest convenience.  Reference is made to the Attorney General's Opinion No. O-6059, which we believe may be helpful in determining the matter.

"Your cooperation in this matter will be greatly appreciated."

After a careful study of Mr. Newell's letter, the Charter of the City of Sherman, the Constitution and Statutes and cases pertaining to the questions involved, we concur in the views expressed by Messrs. Gibson and Gibson, but we cannot agree with the conclusion reached by Mr. Hamilton.

We have determined that the City of Sherman is acting in a dual capacity and has dual powers.  It is a municipal corporation and it is a separate and independent school district.  In like situations, the courts of this State have consistently recognized the dual entities of cities and school districts, and in every instance the court has given effect to the separate entities involved.

Thus in Love v. The City of Dallas, 40 S. W. (2d) 20; Chief Justice Cureton declared:

"The City of Dallas is a municipal corporation, chartered under the laws of the State, has assumed control of its public schools, and as such is to be regarded as an independent school district."

In dealing with schools which are under the control and management of cities, the courts have consistently held that the rate of tax which may be levied for school purposes in such cities is limited by Article 7, Section 3 of the Constitution of Texas, which relates to schools, and is not controlled by constitutional provision relating to cities and towns. In other words, in this respect the courts have treated schools under the management and control of cities as school districts rather than as a part of the cities under whose control the schools are operated.

The leading case announcing the doctrine of the dual nature of such a city is City of Rockdale v. Cureton (Sup. Ct.) 229 S. W. 852. See also Houston v. Gonzales Independent School District (Comm. of Appeals), 229 S.W. 467; M.K. & T. Ry. Co. of Texas v. City of Whitesboro (Comm. of Appeals), 287 S. W. 904; City of Ft. Worth v. Zane-Cetti (Comm. of Appeals), 278 S.W. 183; Treaccar v. City of Galvestion (Galveston Ct. of Civ. App.), 28 S.W. (2d) 887; City of Fort Worth v. Cureton (Sup.Ct.), 222 S.W. 531; City of Belton v. Harris Trust & Savings Bank, 273 S.W. 194 (affirmed by the Texas Comm. of App.), 283 S. W. 164; Temple Ind. Sch. Dist. v. Procter, 97 S.W. (2d) 1047 (writ of error refused); City of El Paso v. Carroll, 108 S.W. (2d) 251 (writ of error refused).

Taxation for municipal purposes in the City of Sherman is governed by Article 11, Section 5, of the Constitution of Texas and Article 1165 of Vernon's Anno. Civil Statutes. Said article and statute read in part as follows:

"Said cities may levy, assess, and collect such taxes as have been authorized by law or by their charters, but no tax for any purposes shall ever be lawful for any one year which shall exceed two and one-half per cent of the taxable property of such city."

Taxation for the management and control of public schools of school districts is governed by Article 7, Section 3 of the Constitution of Texas. This Section authorizes a tax of $1 on the $100 valuation, but has a proviso that said limitation "upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns, constituting separate and independent school districts, nor to independent or common school districts created by general or special law". Thus it is seen that all school districts ar exempted from the constitutional limit of $1 on the $100 valuation, and the Legislature is left free to fix such limit as it deems advisable.

Article 2784-e, Vernon's Annotated Civil Statutes (Acts of 1945, 49th Legislature, page 488, Chapter 304, Section 1) authorizes

$1.50 tax on the $100 valuation in all school districts except cities and towns which constitute separate and independent school districts. As to these districts, the Legislature has left the rate to be fixed by the property taxpaying voters.  Article 2799, Vernon's Annotated Civil Statutes, reads as follows:

"Article 2799.  The governing body of any city or town which is a separate and independent school district, whether incorporated under any act of the Congress of the Republic or the Legislature of Texas, or under any act or incorporation whatever, shall have power by ordinance to annually levy and collect ad valorem taxes for the support and maintenance of public free schools and for the erection and equipment of public free school buildings in the city or town.  The proposition submitted may be for such a rate of ad valorem tax not exceeding such per cent, as may be voted by a majority vote of all votes cast at any such election.  If the proposition is carried, the school tax shall be continued to be annually levied and collected for at least two years, and thereafter, unless it be discontinued at an election held to determine whether the tax shall be continued or discontinued at the request of fifty property taxpayers of such independent district.  When the tax is continued no election to discontinue it shall be held for two years; when the tax is discontinued no election to levy a tax shall be held during the same year."

In the case of City of Rockdale v. Cureton, supra, the following language is used:

"When these bonds were voted, the section concluded with this clause:  'But the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns, constituting separate and independent school districts.'  This provision explicitly relieved independent school districts constituted by cities or towns of the tax limitation imposed upon school districts otherwise constituted, and left the Legislature unrestrained by constitutional provision in that particular.  In keeping with it, the Legislature by the Act of October 10, 1917 (Chapter 14, Acts of Third Called Session of Thirty-fifth Legislature) amended Article 925 so as to provide that cities and towns constituting separate and independent school districts may levy and collect such ad valorem tax for the support and maintenance of their public free schools and for the erection and equipment of school buildings therefor as their electors may determine."

There is no constitutional or statutory limit on the rate a school district such as the Sherman District may levy and collect, so long as the tax is authorized by a majority vote of the property taxpaying voters.

A city to constitute "a separate and independent school district" must have boundaries identical with the school district. When the boundaries are extended to take in lands outside of the City, the city no longer constitutes a separate and independent school district, and the tax limit fixed by general law is applicable.

In view of the foregoing, your first question is answered in the affirmative.

In reply to your second question, we have a serious doubt as to the sufficiency of the proposed amendments quoted in Mr. Newell's letter to accomplish the intended purpose. The proposed amendment to Section 107 clearly authorizes the City to levy $2.50 for city purposes, exclusive of taxes levied for school purposes, but leaves some doubt as to whether the City would have a school tax should the subsequent school tax election fail. There is also some doubt as to the authority of the City Commission to call such an election where the Charter is silent concerning same. It may be that the power is granted under the general law, but we would suggest that you include in your proposed amendments an amendment in substantially the following language:

"For the maintenance and support of public free schools not exceeding eighty-five cents on the $100 assessed value of all real and personal estate and property in the City not exempt from taxation by the Constitution and laws of the State, such limitation as to rate to apply until such times as the qualified property tax payers shall vote to increase same."

or,

"When authorized by the qualified property tax paying voters, the City Commission shall by ordinance annually levy and collect a tax of not exceeding 1-1/2 per cent of all the taxable property of said City not exempted from tax by the Constitution and laws of the State of Texas for the support, maintenance, and operation of the free schools and provide an interest and sinking fund sufficient to pay at maturity all bonds heretofore or hereafter issued for the erection and equipment of public free schools within the City of Sherman."

If the charter is amended in accordance with our first suggestion, the City could still maintain the eighty-five cent tax as now provided in the charter until after the election to increase same.

In reply to your third question, you are respectfully advised that it is our opinion that the school tax election should be called by the City Commission, said Commission having the power under the City Charter "to annually levy and collect" the authorized taxes, and also being "vested with the power to maintain, regulate, direct and govern all the public free schools now established or hereafter to be established within the limits, and it is further authorized to pass such ordinances,

rules and regulations, not inconsistent with the Constitution and laws of this State, as may be necessary to govern the same, establish new schools, purchase buildings sites, construct school houses, and generally to promote free public education within its limits."

Trusting that this answers your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Claud O. Boothman
Assistant

COB:V:wc

APPROVED MAY 9, 1946
 s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By GWB Chairman